UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RILEY MITCHELL,

            Plaintiff,

-against-

URBAN STRATEGIES, INC.,
URBAN STRATEGIES MANAGEMENT
CORP., GWENETH MUNROE,
US BROWNSVILLE III HOUSING
DEVELOPMENT FUND CORPORATION and
LOCAL 108, RETAIL, WHOLESALE AND
DEPARTMENT STORE UNION, UFCW,
AFL-CIO, CLC,

            Defendants.

Case No.: 20-cv-893

**COMPLAINT**

Plaintiff RILEY MITCHELL ("Plaintiff" or "Mitchell"), by and through his attorneys, LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C., as and for his Complaint, complains of Defendants URBAN STRATEGIES, INC., URBAN STRATEGIES MANAGEMENT CORP., (together "Urban") GWENETH MUNROE ("Munroe"), US BROWNSVILLE III HOUSING DEVELOPMENT FUND CORPORATION ("US Brownsville") and LOCAL 108, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, UFCW, AFL-CIO, CLC (the "Union") (together "Defendants"), upon information and belief, as follows:

## I. NATURE OF THE ACTION

1. Mitchell brings this action pursuant to the Labor-Management Relations Act of 1947, as amended ("LMRA") to remedy Urban's breach of the terms of the Collective Bargaining Agreement ("CBA") by and between Urban and the Union, and the Union's breach of its duty of fair representation to Mitchell.

1

2. Mitchell claims that Urban terminated his employment wrongfully and without cause in breach of the terms of the CBA and implied covenant of good faith and fair dealing in violation of the Common Law of the State of New York, and that the Union breached the duty of fair representation it owed him.

3. Mitchell further brings this action to remedy discrimination in the terms, conditions, and privileges of rental of a dwelling on the basis of sex, arrest record, marital status and actual or perceived disability status in violation of the Fair Housing Act of 1968 ("FHA") as amended, 42 U.S.C. § 3601 *et seq.*, the New York State Human Rights Law, Executive Law § 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, Administrative Code of the City of New York, § 8-101 *et seq.* ("NYCHRL").

4. Mitchell also claims that in violation of NYSHRL and NYCHRL, Urban and Munroe discriminated against him in the terms, conditions, and privileges of employment because of his of sex, arrest record, marital status and/or actual or perceived disability status of his wife.

5. In addition, Mitchell claims that in violation of those laws, Urban and Munroe retaliated against him for his complaints about said Defendants' discriminatory acts toward him.

6. Mitchell seeks monetary relief, including back pay, front pay, compensatory and punitive damages, attorney's fees and costs of the action, injunctive relief consisting of an order requiring Urban and US Brownsville to reinstate him to his position and dwelling, respectively, declaratory and other appropriate legal and equitable relief pursuant to the aforesaid laws.

## II. JURISDICTION AND VENUE

7. Jurisdiction of the subject matter of this action is established in this court by LMRA and FHA.

8. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this court's jurisdiction, are based on the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, to hear related state law causes of action. The events, parties, transactions, and injuries that form the basis of Mitchell's federal claims are identical to the events, parties, transactions, and injuries that form the basis of his claims brought under the NYSHRL, NYCHRL and New York Common Law.

9. As part of the unlawful employment practices complained of herein occurred within the Eastern District of New York and Defendants regularly do business within this District, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## III. SATISFACTION OF PROCEDURAL PREREQUISITES FOR SUIT

10. Pursuant to the provisions of the CBA, Mitchell exhausted the contractual remedies prior to filing this suit.

11. Following the wrongful termination of his employment, Mitchell repeatedly sought to initiate a grievance through the Union.

12. In violation of the duty of fair representation the Union owed to Mitchell, the Union arbitrarily and unreasonably failed to communicate with Mitchell, failed to conduct even a minimal investigation of his case and failed initiate or process a grievance on Mitchell's behalf.

13. Given the Union's failure to communicate with Mitchell, perform a minimal investigation of his claim and/or initiate a grievance on his behalf, it is futile to expect that the Union would process the requested grievance.

14. Mitchell's claim pursuant to the LMRA and New York Common Law was timely commenced.

## IV. **THE PARTIES**

15. Mitchell is 61 years of age, an African-American male and was born in the United States in 1958.

16. At all times herein alleged, Mitchell was resident in Brooklyn, Kings County, New York, and was employed by Urban for approximately 15 years.

17. At all times herein alleged, Defendant Urban Strategies, Inc., was and is still a domestic not-for-profit corporation, duly incorporated under the laws of the State of New York, with its principal place of business located within Brooklyn, City and State of New York.

18. At all times herein alleged, Defendant Urban Strategies, Inc., was and is still a Brooklyn based social service agency that, among other things, provides affordable housing to low to moderate-income tenants.

19. At all times herein alleged, Defendant Urban Strategies Management Corp., was and is still a domestic business corporation, incorporated under the laws of the State of New York, and is the property development and management arm of Defendant Urban Strategies, Inc.

20. Defendant Urban Strategies, Inc., is the holding company, parent, affiliate, division and/or alter ego of Defendant Urban Strategies Management Corp., both entities act together or jointly as one entity and are treated as one entity.

21. At all times herein alleged, Urban owned, controlled, managed and/or operated over 500 housing units located mostly in Brooklyn, New York.

22. At all times herein alleged, Munroe was and still is an adult person and an employee, servant, agent, representative and/or Urban's Director of Property Management.

23. At all times herein alleged, Munroe aided, abetted, incited, compelled or coerced the violation of Michell's rights in violation of FHA, NYSHRL and the NYCHRL.

24. At all times herein alleged, US Brownsville, was and is still a domestic not-for-profit corporation, duly incorporated under the laws of the State of New York, and is the owner or landlord of the premises described as 61 Riverdale Avenue, Apartment 1D, Brooklyn, New York 11212, which premises was controlled and/or managed by Urban.

25. Urban is an employer within the meaning of the LMRA, NYSHRL, NYCHRL and/or New York law.

26. At all times herein alleged, the Union was and still is a labor organization representing employees in an industry affecting commerce.

27. At all times herein alleged, the Union was and still is the recognized sole and exclusive collective bargaining representative of the bargaining unit consisting of employees of Urban, including but not limited to, Mitchell and all other full time and part time maintenance employees, handy persons and/or porters.

## V. **FACTUAL ALLEGATIONS**

28. Mitchell began his employment with Urban as a Porter in October 2004, and was promoted and employed in the position of Building Superintendent from about 2008 until December 26, 2019, when Urban wrongfully terminated his employment on the pretextual grounds that the deadline for him to move to a new site location has passed.

29. In actual fact, after having worked for Urban for more than 15 years without receiving any disciplinary charges or write-ups, Urban wrongfully discharged Mitchell on the basis of an unrealistic deadline to move to a new site location, which deadline was

5

discriminatorily imposed on Mitchell because of his gender, arrest record, marital status and actual or perceived disability status of his wife, and in violation of the CBA.

30. At all times herein alleged and for many years prior thereto, Urban assigned Mitchell to work as the Building Superintendent for two multiple dwelling buildings owned by US Brownsville and managed by Urban, located at 61 Riverdale Avenue and 807 Saratoga Avenue, Brooklyn, New York.

31. Mitchell's work performance, attendance and punctuality were consistently excellent throughout his employment with Urban. His job description as the Building Superintendent for the two buildings included but were not limited to the following:

   a. Maintain and clean all hallways, office, lobbies, stairways, sidewalks and other grounds of both buildings on a regular basis.

   b. Secure, cover, empty and clean all garbage and refuse containers on a regular basis.

   c. Comply with all Sanitation rules, including conspicuous posting of recycling instructions in every building.

   d. Snow and ice removal from all sidewalks and walk areas.

   e. Insure that roofs, gutters and basement are free of debris at all times.

32. As part of the perquisites of his employment with Urban, Mitchell leased, rented, occupied and resided at 61 Riverdale Avenue, Apartment 1D, with his wife, Sheree Mitchell - nee Smith, as well as their three minor children whose ages are 6 years, 9 years and 11 years, having been born in 2013, 2010 and 2009, respectively.

33. At all times herein alleged, all three of Mitchell's children were and still are students at Riverdale Avenue Community School, a New York City Public School located at 76 Riverdale Avenue - within a stone throw of Mitchell's residence.

34. Mitchell's wife, Sheree Mitchell is a person with disability in that she is recovering or has recovered from alcoholism and is undergoing treatment for such condition.

35. In connection with a neglect proceeding pending at the Family Court of the State of New York, Kings County, on or about May 9, 2019, said court entered a Temporary Order of Protection which, among other things, directed Sheree Mitchell to stay away from the home and school of each of Mitchell's children and to refrain from communication or any other type of contact with all the children. The order of protection is still current and continues to be in effect through the present date. Thus, Mitchell has been the sole custodial parent of his three minor children through the present date.

36. On or about June 26, 2019, while said order of protection was in effect, Sheree Mitchell and her then 18 years old son, Lorenzo Smith Colley, went into Mitchell's apartment in violation of the order of protection. Following Sheree Mitchell's refusal to leave the apartment as mandated by the order of protection, Mitchell called 911 and reported that Sheree Mitchell was in the apartment in violation of an order of protection.

37. Police Officer Benjamin Chen responded to Mitchell's 911 call and was notified that pursuant to the order of protection, Sheree Mitchell was required to stay away from the apartment – the home of Mitchell's children. Rather than arrest Sheree Mitchell or ask her to leave the apartment, PO Chen unreasonably arrested Mitchell without any probable cause even though Mitchell was the complainant and the person who called 911, reported the incident and

the circumstances of the order of protection to PO Chen, and he (PO Chen) reviewed the order of protection.

38. Mitchell's arrest was further unreasonable and unlawful because the order of protection clearly directs in bold capital letters that, "[t]he protected party cannot be held to violate this order nor be arrested for violating this order." As then custodial parent of his children, Mitchell was a "protected party" under the order of protection.

39. Following Mitchell's arrest, PO Chen caused Mitchell to be maliciously prosecuted for various criminal offences in the Criminal Court of the City of New York, Kings County - the prosecution was unjustified and without probable cause.

40. Meanwhile, upon Mitchell's arrest, Mitchell notified Munroe about the arrest. Munroe was visibly upset that Mitchell was arrested by the police, did not want to hear the circumstances of the arrest and informed Mitchell that his employment with Urban will be terminated because of the arrest and because he is married to Sheree Mitchell. Whereupon, Mitchell protested and complained to Munroe that it would be unfair and unlawful to terminate his employment because of an unjustified arrest or marriage to Sheree Mitchell. Mitchell reasonably believed and still believes that it would be unlawful discrimination to terminate his employment because of the arrest and marital status.

41. Thereafter, Munroe began to retaliate against Mitchell and subject him to unfair treatment, would threaten him with termination and disciplinary action, speak to him in condescending manner with harsh tone of voice, micro-managed and subjected him to excessive scrutiny, unfairly cancelled his scheduled vacation without notice, threatened and attempted to procure false tenants' petition to use as a pretext for Mitchell's eventual discharge.

42. Given that Sheree Mitchell's June 26, 2019, violation of the order of protection was aided by her son, Lorenzo Smith Colley, on or about July 12, 2019, the Family Court issued an Order of Protection against Lorenzo Smith Colley, which among other things, directed Lorenzo Smith Colley to stay away from Mitchell, his home, school, business and place of employment.

43. Also, in or about August, 2019, Alicia Williams, Urban's tenant at 61 Riverdale Avenue, Apartment 4D, was involved in a Family Court neglect proceeding which did not involve or relate to Mitchell. Apparently, the Family Court entered an order of protection against Ms. Williams, which required her to stay away from said Apartment 4D.

44. Apparently, as a result of the order of protection and unbeknown to Mitchell, either Munroe or the New York City Fire Department caused the front door lock to Apartment 4D to be changed so that Ms. Williams would not have access into said Apartment.

45. On or about August 10, 2019, Ms. Williams approached Mitchell within the premises of 61 Riverdale Avenue, asked Mitchell to unlock the front door to Apartment 4D, incorrectly stated or assumed that said lock was changed or replaced by Mitchell and then without any provocation sucker-punched Mitchell on the face. Mitchell did not retaliate but he immediately called 911 and reported the sucker-punch or assault incident.

46. The sucker-punch incident was captured by the surveillance camera on the premises. When Police Officers responded to Mitchell's 911 report, they spoke with Mitchell, viewed the surveillance video footage of the sucker-punch incident and then proceeded to arrest Ms. Williams for the assault on Mitchell.

47. As a result of the sucker-punch, Ms. Williams was charged with assault and prosecuted in the Criminal Court for several criminal offenses.

48. As a further result of the unprovoked sucker-punch, the Criminal Court issued an order of protection against Ms. Williams and in favor of Mitchell, which among other things, directed Ms. Williams to stay away from Mitchell, his home, business, employment and to refrain from assault, stalking … of Mitchell. The order of protection was to remain in force until February 20, 2020, and may be extended.

49. Munroe stated that she will forward a copy of the order of protection issued against Ms. Williams to Housing Choice Voucher Program ("Section 8") and notify Section 8 that because of the unprovoked sucker-punch of the Building Superintendent as well as the order of protection which in part, directed Ms. Williams to stay away from Mitchell's home, business, and place employment, Ms. Williams will not be allowed to continue with her tenancy or residency at 61 Riverdale Avenue and that Ms. Williams' tenancy will be transferred to another building managed by Urban.

50. On or about October 2, 2019, the criminal court dismissed all charges pertaining to the June 26, 2019 arrest of Mitchell. Mitchell notified Munroe that all charges against him have been dismissed and furnished her with a copy of the Certificate of Disposition of the criminal case.

51. It should be reiterated that following Mitchell's complaint to Munroe that it would be unlawful to discharge him because of his June 26, arrest and marriage to Sheree Mitchell, Munroe began to retaliate against Mitchell and subject him to unfair treatment, would threaten him with termination and disciplinary action, speak to him in condescending manner with harsh tone of voice, micro-managed and subjected him to excessive scrutiny, unfairly cancelled his scheduled vacation without notice, threatened and attempted to procure false tenants' petition to use as a pretext for Mitchell's eventual discharge.

52. In or about the first week in November, 2019 – soon after Mitchell furnished Munroe with a copy of the certificate of disposition of the criminal case - Munroe reiterated that Mitchell would be discharged from his employment with Urban and his tenancy at 61 Riverdale Avenue, Apartment 1D, terminated because of his wife and the June 26 arrest.

53. Mitchell again protested said discharge and termination of tenancy and further complained to Munroe that neither the arrest nor the fact that he is married to Sheree Mitchell is a justifiable ground for the termination of his employment and tenancy.

54. Following Mitchell's complaint of discrimination, Munroe modified her threat to discharge Mitchell because of his arrest. She instead, threatened that unless Mitchell agreed to a transfer and move to a different work site, Mitchell would be discharged on the basis his arrest, the unprovoked sucker-punch incident and because he is married to Sheree Mitchell.

55. Munroe asked Mitchell, "suppose the tenants put up a petition for your removal?" She then stated that Mitchell will be discharged if he failed to move out of 61 Riverdale because Urban's management decided that Ms. Williams – the female tenant who sucker-punched Mitchell without provocation – will be allowed to return and continue her tenancy or residency at 61 Riverdale Avenue.

56. Thus, rather than transfer Ms. Williams' tenancy from 61 Riverdale to a different building as Munroe previously indicated she would do, Urban decided, on the basis of Mitchell's gender to "force" him to agree to a transfer and move to another work site and dwelling or be discharged.

57. Mitchell immediately notified his Union Shop Steward, Frank Rodriguez ("Rodriguez") about his impending conditional discharge and requested that the Union challenge such discharge on his behalf.

58. Recognizing that there was no just cause for Mitchell's discharge or "forced" transfer in violation of the terms of the CBA, Munroe machinated a plan to create a pretext upon which Mitchell's conditional discharge would be based.

59. Specifically, unbeknown to Mitchell, Munroe procured a flyer on Urban's letter head, which stated in capital letters, "CAN WE START A PETION (sic) TO REMOVE THE SUPER FROM 61 RIVERDALE AVE BUILDING."

60. The copies of the flyer were given to Mitchell's immediate supervisor, Solomon Baptist, who in turn gave the flyers to Walsh, an illiterate maintenance worker employed by Urban at 61 Riverdale Avenue, with instructions not to let Mitchell know about the flyers but to slide the flyers under the front doors to the tenants' apartments at both buildings.

61. However, Walsh later asked Mitchell if he had any problem with Baptist – explaining that Baptist gave him flyers concerning Mitchell to slid under the tenants' apartment doors. At least one tenant who received a copy of the flyer (Frechi - residing at 61 Riverdale Apartment 3E) provided a copy of the flyer to Mitchell and told Mitchell that she won't start any petition against him because he does his job, does not bother the tenants and minds his business. Another tenant, Kiyanna, who resides at 807 Sarotoga Avenue, Apartment 2A also received a copy of the flyer.

62. On or about November 19, 2019, a meeting was held to, among other things, discuss Mitchell's threatened conditional discharge. The meeting was attended by the President of the Union, Charles N. Hall, Jr. ("Hall"), Rodriguez, Mitchell as well as Munroe and Pelham Bollers, ("Bollers") the Executive Director of Urban. It was obvious at the meeting that there was no just cause for Mitchell's "forced" transfer or conditional discharge.

63. Mitchell reiterated that he did not commit any misconduct that would justify his discharge, "forced" transfer or imposition of any disciplinary action and that requiring him to move his minor children to a new school district in the middle of the school year is not only unfair but unrealistic and impractical, more so given his status as a single parent.

64. By memo dated November 26, 2019, from Sylvester Okonkwo ("Okonkwo") Urban's Director of Human Resources to Mitchell, Urban among other things, formally notified Mitchell that administrative decision was made to transfer him to new job sites (607 Jerome and 475 Wyona) and that Mitchell had two weeks (from November 26 to December 10, 2019) to move to said new job sites. The memo noted that it was copied to Bollers, Munroe and Hall. Also, Mitchell presented the memo Rodriguez.

65. By memo dated December 10, 2019, from Okonkwo to Mitchell, Urban for the first time formally informed Mitchell that "[t]he continuity of [his] employment with the organization is contingent upon [his] relocating to the new site." And that Mitchell "must move out all [his] personal belongings to [his] new site [by December 10, 2019]" and that "non-compliance may have adverse consequences. The memo noted that it was copied to Bollers, Munroe and Hall. Mitchell again presented the memo to Rodriguez and requested him to have the Union challenge his "forced" and unlawful transfer.

66. By letter dated December 26, 2019, from Okonkwo to Mitchell, Urban among other things, notified Mitchell that his employment as a Building Superintendent was terminated effective immediately and that he had one month from December 26, 2019, to vacate 61 Riverdale Avenue, Apartment 1D. Again, the letter was copied to Bollers, Munroe and Hall. Also, Mitchell presented the letter to Rodriguez and requested the Union to challenge his termination.

67. By memo dated December 30, 2019, from Gary Golding, Urban's Property Manager to Mitchell, Urban among other things, asked Mitchell to grant access to Apartment 1D for removal of cameras, turn over the superintendent keys for 61 Riverdale Avenue and 807 Saratoga Avenue as well as Urban's cell phone and charger.

68. On or about January 27, 2020, US Brownsville commenced a holdover eviction proceedings against Mitchell in the Civil Court of the State of New York, County of Kings, assigned Index No. L&T 53241/2020, which among other things, seeks to evict Mitchell and his three minor children from 61 Riverdale Avenue, Apartment 1D.

69. Despite repeated demands the Union failed to communicate with Mitchell, conduct minimal investigation of his case, or initiate a grievance on his behalf. On or about January 6, 2020, Mitchell sent a facsimile directly to the Union's office requesting that a grievance be filed for him but the Union ignored Mitchell and has failed to contact or communicate with him.

70. The Union unreasonably failed to pursue an investigation of the circumstances of Mitchell's "forced" transfer; unreasonably accepted Urban's reasons for the unlawful "forced" transfer; unreasonably ignored Mitchell's discrimination and retaliation claims; unreasonably failed to conduct even a minimal investigation and/or pursue evidence which demonstrated that Urban and Munroe sought to procure a false a false petition against Mitchell in order to use the false petition to create a ground to justify Mitchell's transfer or conditional discharge; and based its decision not to pursue a minimal investigation or grievance on behalf Mitchell on irrational considerations.

71. The Union's failures to conduct even a minimal investigation of the circumstances surrounding Mitchell's transfer and discharge and/or to timely initiate a grievance

proceeding on his behalf constitutes a breach of the Union's duty of fair representation to Mitchell.

72. Furthermore, the Union's failure to communicate with Mitchell despite repeated requests and receipt of multiple correspondence from Urban about Mitchell's conditional discharge or "forced" transfer in violation of the CBA and seniority list were done in bad faith and constituted a breach of the duty of fair representation the Union owed to Mitchell.

## FIRST CAUSE OF ACTION AGAINST URBAN
## BREACH OF THE CBA AND IMPLIED COVENANT OF GOOD FAITH
## UNDER LMRA AND NEW YORK LAW

73. Mitchell repeats and realleges each and every allegation contained in paragraph 1 through 72 of this Complaint with the same force and effect as if fully set forth herein.

74. The CBA has implied covenant of good faith and fair dealing.

75. By the acts and practices described herein, Urban breached its contractual obligations under the CBA as well as the implied covenant of good faith and fair dealing.

76. As a result of Urban's breach of the CBA and breach of the implied covenant of good faith and fair dealing, Mitchell has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## SECOND CAUSE OF ACTION AGAINST THE UNION
## BREACH OF DUTY OF FAIR REPRESENTATION UNDER LMRA

77. Mitchell repeats and realleges each and every allegation contained in paragraph 1 through 76 of this Complaint with the same force and effect as if fully set forth herein.

78. The Union owed Mitchell a duty of fair representation.

79. By the acts and practices described herein, the Union breached the duty of fair representation it owed to Mitchell.

80. As a result of the Union's breach of its duty of fair representation, Mitchell has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

**THIRD CAUSE OF ACTION AGAINST URBAN, MUNROE AND US BROWNSVILLE
DISCRIMINATION IN VIOLATION OF FHA, NYSHRL AND NYCHRL**

81. Mitchell repeats and realleges each and every allegation contained in paragraphs 1 through 80 of this Complaint with the same force and effect as if set forth herein.

82. By the acts and practices described herein, Urban, Munroe and US Brownsville have discriminated against Mitchell in the terms, conditions and privileges of rental of a dwelling on the basis of his gender and arrest record in violation of FHA, NYSHRL and NYCHRL.

83. In taking the above-described discriminatory actions, said Defendants acted with malice and/or reckless indifference to Mitchell's rights under FHA, NYSHRL and NYCHRL.

84. As a result of said Defendants' discriminatory acts, Mitchell has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

**FOURTH CAUSE OF ACTION AGAINST URBAN AND MUNROE
DISCRIMINATION IN VIOLATION OF NYSHRL AND NYCHRL**

85. Mitchell repeats and realleges each and every allegation contained in paragraphs 1 through 84 of this Complaint with the same force and effect as if set forth herein.

86. By the acts and practices described herein, Urban and Munroe have discriminated against Mitchell in the terms, conditions and privileges of employment on the basis of his gender and arrest record in violation of NYSHRL and NYCHRL.

87. In taking the above-described discriminatory actions, said Defendants acted with malice and/or reckless indifference to Mitchell's rights under FHA, NYSHRL and NYCHRL.

88. As a result of said Defendants' discriminatory acts, Mitchell has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

### FIFTH CAUSE OF ACTION AGAINST URBAN, MUNROE AND US BROWNSVILLE
### RETALIATION IN VIOLATION OF FHA, NYSHRL AND NYCHRL

89. Mitchell repeats and realleges each and every allegation contained in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth herein.

90. In retaliation for Mitchell's complaints about Urban's, Munroe's and US Brownsville's discriminatory acts, said Defendants coerced, intimidated, threatened, interfered or adversely affected Mitchell's rights protected by FHA, NYSHRL and NYCHRL.

91. In taking the above-described retaliatory actions, said Defendants acted with malice and reckless indifference to Mitchell's rights under FHA, NYSHRL and NYCHRL.

92. As a result of said Defendants' retaliatory acts, Mitchell has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

### SIXTH CAUSE OF ACTION AGAINST URBAN AND MUNROE
### RETALIATION IN VIOLATION OF THE NYSHRL AND NYCHRL

93. Mitchell repeats and realleges each and every allegation contained in paragraph 1 through 92 of this Complaint with the same force and effect as if fully set forth herein.

94. In retaliation for Mitchell's complaints about Urban's and Munroe's discriminatory acts, said Defendants adversely affected Mitchell's employment.

95. In taking the above-described retaliatory actions, said Defendants acted with malice and reckless indifference to Mitchell's rights under the NYSHRL and the NYCHRL.

96. As a result of said Defendants' retaliatory acts, Mitchell has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## VI. **PRAYER FOR RELIEF**

**WHEREFORE**, Mitchell respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of the LMRA, FHA, the NYSHRL and the NYCHRL;

(b) enjoining and permanently restraining these violations of LMRA, FHA, NYSHRL and NYCHRL;

(c) directing Defendants Urban and Munroe to reinstate Mitchell to his employment position, together with all the perquisites of the position;

(d) precluding Defendants Urban and US Brownsville from evicting Mitchell from the dwelling in question;

(e) directing Defendants to take such action as is necessary to ensure that the effects of these unlawful employment and housing practices are eliminated and do not continue to affect Mitchell's employment and housing opportunities;

(f) directing Defendants to make him whole for all earnings he would have received but for Defendants' unlawful conduct, including, but not limited to, wages, salary raises, pension, and other lost benefits;

(g) directing Defendants to pay Mitchell an additional amount as compensatory damages for his pain and suffering;

(h) directing Defendants to award Mitchell back pay for wrongful discharge including, but not limited to, pension, and other lost benefits;

(i) directing Defendants to pay Mitchell an additional amount as punitive damages for their willful and/or reckless disregard for Mitchell's statutory rights;

(j) awarding Mitchell such interest as is allowed by law;

(k) awarding Mitchell his reasonable attorneys' fees and costs; and

(l) granting other such and further relief as this Court deems necessary and proper.

## VII. **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mitchell demands a trial by jury.

Dated:   Brooklyn, New York
         February 18, 2020

LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

By: _____
Vincent I. Eke-Nweke (VE 5282)
Attorney for the Plaintiff Riley Mitchell
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300